AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

UNITED STATES OF AMERICA

v.                                                         Case No. 21-MJ-600

**SHANE ANTHONY SCACCIA**
*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between in or about February 2021, and in or about April 2021, in the Western District of New York, **SHANE ANTHONY SCACCIA**, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D).

In or about March 2021, in the Western District of New York, **SHANE ANTHONY SCACCIA** did knowingly possess and transfer a machine gun, that is, 14 auto sears for an AR-15 rifle, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).

In or about March 2021, in the Western District of New York, **SHANE ANTHONY SCACCIA**, not being a licensed dealer, importer, manufacturer or collector of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly transported in interstate commerce from New York to Minnesota, a machinegun as defined in 26 U.S.C. § 5845(b), that is, 14 auto sears for an AR-15 rifle, without the specific authorization of the Attorney General, in violation of 18 U.S.C. §§ 922(a)(4) and 924(a)(1)(B).

On or about March 23, 2021, in the Western District of New York, **SHANE ANTHONY SCACCIA** did knowingly possess and transfer a machine gun, that is, one auto sear for an AR-15 rifle, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).

On or about April 15, 2021, in the Western District of New York, **SHANE ANTHONY SCACCIA** did knowingly possess and transfer a machine gun, that is, 15 auto sears for an AR-15 rifle, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).

On or about April 15, 2021, in the Western District of New York, **SHANE ANTHONY SCACCIA** knowingly possessed firearms, that is, 15 auto sears and a firearm silencer, not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

This Criminal Complaint is based on these facts:
☒ Continued on the attached sheet.

_____
*Complainant's signature*

THERESA LLOYD
Special Agent, Federal Bureau of Investigation
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date:  _April 27_ , 2021

_____
*Judge's signature*

City and State:  _Rochester, New York_

HONORABLE MARK W. PEDERSEN
United States Magistrate Judge, WDNY
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**</u>

State of New York )
County of Monroe )     SS:                                **Case No. 21-MJ-600**
City of Rochester )

    I, **THERESA LLOYD**, being duly sworn, depose and state the following:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

    1.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have served in this capacity for approximately 15 years. I am currently assigned to the FBI Rochester Resident Agency in Rochester, New York. I have been assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Violent Crime Task Force for the last seven years. During my career, I have participated in numerous federal, state and local investigations involving violent crime, narcotics trafficking, and firearms possession and trafficking.

    2.    I make this affidavit in support of a criminal complaint charging SHANE ANTHONY SCACCIA with violations of 18 U.S.C. §§ 922(a)(1)(A) (manufacturing and dealing firearms without a license), 922(a)(4) (manufacturing and dealing machineguns without a license) and 922(o)(1) (possession and transfer of machineguns), and 26 U.S.C. § 5861(d) (possession of unregistered firearms).

    3.    The assertions made in this affidavit are based on information from various sources, including information from law enforcement officers and agents assigned to the FBI and ATF; records and information obtained from Facebook, Inc., through a subpoena and a search warrant; information and records obtained from Google LLC through a subpoena and a search warrant; subpoenaed records from PayPal, Inc.; information from a reliable confidential source (CS); information from an undercover ATF Special Agent (UC); and

information from public databases, all of which are true and correct to the best of my knowledge and belief. Further, I have had discussions with law enforcement officers and agents involved in this investigation who have confirmed the accuracy of the information contained within this affidavit. Because this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only the facts that relate to the issue of whether probable cause exists to believe that SCACCIA committed the above-described offenses.

<u>**FACTS ESTABLISHING PROBABLE CAUSE**</u>

4.      SHANE ANTHONY SCACCIA is a 32-year old white male, who resides at 52 Clark Street, Apartment No. 78, Brockport, New York. A joint investigation by the FBI and ATF has revealed that, since at least March 2020, SCACCIA has been involved in manufacturing and selling "auto sears," and selling firearm silencers, to customers throughout the United States. Auto sears – which are also known as "drop in auto sears" – are parts that, when properly inserted into or added to a firearm, convert the firearm to fully automatic. I know that an auto sear is a part or combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Auto sears, therefore, qualify as machineguns under 26 U.S.C. § 5845(b).[1] SCACCIA is not licensed to manufacture or deal firearms, and none of the auto sears or silencers referenced in this affidavit is registered to SCACCIA, as required by federal law.

---

[1]  A "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . .*" 26 U.S.C. § 5845(b) (emphasis added).

5.      SCACCIA sells auto sears and firearm silencers primarily online. He typically negotiates the sales of auto sears and silencers using a Facebook account and Gmail account, both of which are in the name of "Dan Cuminale." Prospective customers contact SCACCIA through the Facebook or Gmail accounts, and inquire about the availability of auto sears and/or silencers using code words. After reaching an agreement on the terms of sale, SCACCIA ships the auto sears and/or silencers via United States mail to his customers, and accepts payment through Paypal and other online applications.

6.      SCACCIA sells two types of auto sears – one for use in AR-15 rifles and one for use in Glock handguns. In their online communications, SCACCIA and his customers refer to the auto sears for AR-15 rifles using code words, such as "bottle openers," "openers" or "wall hangers." Likewise, SCACCIA and his customers refer to the auto sears for Glock handguns using code words, such as "door stops," "door stoppers" or "stops." SCACCIA offers both types of auto sears for sale in either plastic or stainless steel. SCACCIA manufactures the plastic auto sears using 3-D printers, and uses an unidentified machinist to manufacture the stainless steel auto sears. In their online communications, SCACCIA and his customers also refer to silencers using code words, such as "filters," "fuel filters," "oil filters," and "solvent traps." SCACCIA obtains at least some of his silencers from a supplier or manufacturer in China.

**SCACCIA'S ONLINE ACCOUNTS**

7.      Information and records gathered during this investigation show that SCACCIA uses a Gmail account with the e-mail address dancuminale@gmail.com and the name "3D Dan" ("Gmail account"), and the Facebook account associated with User ID 100011917994365 and user name "Dan Cuminale" ("Facebook account"), to sell auto sears

and firearm silencers. Records show that the registered e-mail address for the Facebook account is dancuminale@gmail.com and the credit card associated with the Facebook account is in the name of SHANE SCACCIA.

8.      PayPal records show that  there are five PayPal accounts associated with the e-mail address dancuminale@gmail.com. All five accounts are registered in the name of SHANE SCACCIA, and four of the accounts list the residence at 52 Clark Street, Apartment No. 78, Brockport, New York ("SCACCIA's apartment"), as one of the addresses associated with the accounts. All five accounts show payments for, among other things, equipment and materials used for a three-dimensional (3-D) printer, including 3-D printer filament, 3-D printer glue sticks, silicon grease, and lithium grease. Records for one of these PayPal accounts show entries for payments received for items described as "bottle openers," "can openers," "openers," and "stopps," which, as detailed herein, are code words used by SCACCIA and his customers to refer to auto sears.

**PURCHASE OF AUTO SEARS AND FIREARM SILENCER BY CS IN FEBRUARY/MARCH 2021**

9.      In February 2021, the FBI and ATF utilized a confidential source (CS) to make an online controlled purchase of auto sears and a firearm silencer from SCACCIA.[2] The purchase was arranged through a series of e-mails over the Gmail account. The CS told SCACCIA that he/she had been given his contact information from "a brother" and asked if SCACCIA still had "items available for sale." SCACCIA responded, "What items?" The CS replied, "Wall hangers and oil filter," meaning auto sears and a firearm silencer. SCACCIA responded, "I've got a few of each," noting that he has plastic or stainless-steel "wall hangers"

---

[2] The CS is cooperating with the FBI in exchange for monetary compensation. The information provided by the CS has been documented in e-mails between the CS and SCACCIA and, therefore, is reliable.

4

and "a few styles" for the "filters." The CS expressed interest in the plastic "wall hangers," inquired about the price for them, and asked about the styles available for the "filters." SCACCIA said that "plastic ones are cheap I do 8 for 30," meaning eight auto plastic sears for $30. The CS stated that he/she would place an order for eight plastic auto sears. The CS also inquired about the cost for the stainless-steel auto sears and indicated the thread size for the firearm suppressor was "1/2"-28." SCACCIA responded that the price for the stainless-steel auto sears would be "125," meaning $125 each, and that he has "nice filters in that thread for 150," meaning he had silencers in that thread size for $150 each. SCACCIA sent the below image of what appears to be a disassembled silencer:



The CS responded that he would "do the ½" thread one for now," and inquired about the method of payment and whether the package would be shipped "discreet." SCACCIA replied, "Cashapp or PayPal."

10.     Later in February 2021, the CS sent an e-mail to SCACCIA at the Gmail account. The CS indicated that he/she wanted to confirm that SCACCIA "still [had] the oil filter and wall hangers ready for shipping" and that he/she would place the order that day. SCACCIA later responded that he uses PayPal, Cashapp, and Chime, and directed the CS to "always leave the payment notes etc. blank" when he sends payment. SCACCIA sent another message in which he said he still had "a nice cup filter" for $150 and a couple of cheaper styles for $60 each. The CS responded that he/she was "looking for the filter that looked sharp" and that he/she "wanted the plastic wall hangers for $30," and asked if he/she should send $180 to the Gmail account on PayPal. SCACCIA responded, "Yes this email on PayPal send friends and family so they dont [sic] charge fee and leave notes blank and send shipping info on here." The CS later replied that the payment was sent and gave SCACCIA an address to which to send the shipment, which was an undercover mailbox at a United Parcel Service (UPS) store in Minnesota. SCACCIA asked the CS what design he/she wanted for "the plastic" and sent the below image:



The CS told SCACCIA to "mix them." SCACCIA agreed and told the CS that he would send the shipment the following week. SCACCIA told the CS that he also had other items available for sale, including "wix style filters" for $40, "steel bottle openers" for $100, and "seeds," which he later explained meant ammunition. SCACCIA also said that he 3-D prints lower receivers for AR-15s and Glocks, as well as firearm magazines. SCACCIA noted that the CS "got the 2 things [referring to the auto sears and silencer] I'm not discounting everything else is on sale . . . just because the nice filter costs me a bit and the plastic never stops rolling lol."

11.    In March 2021, SCACCIA sent the CS the United States Postal Service (USPS) tracking number 9405828206335438891088 for the shipment. The CS – using an undercover PayPal account – sent a payment of $180 to one of SCACCIA's PayPal accounts through the email address dancuminale@gmail.com. The receipt for the transaction indicated that the name associated with the account is SHANE SCACCIA.

12.    On March 8, 2021, a USPS parcel was delivered to the undercover mailbox. Inside the parcel were 14 plastic devices that appeared to be auto sears, a black metal tube

(containing seven additional metal parts inside) that appeared to be a silencer, and a hollow metal end-piece. The parcel was sent via USPS and had a return address of "shane scaccia 2117 Buffalo Rd #113 Rochester NY 14624-1507" (which is a UPS store location). USPS records show that the parcel was sent from the United States Post Office branch located at 14 Main Street, Brockport, New York, on March 4, 2021. The photographs below depict the items contained in the parcel:





13.     On March 18, 2021, ATF Firearms Enforcement Officer Daniel Hoffman, who is assigned to the ATF's Firearms Technology Criminal Branch, examined and tested the items purchased by the CS from SCACCIA. He conducted a separate test for each type of auto sear. During each test, Officer Hoffman inserted the auto sear into a semi-automatic AR-15-type rifle loaded with five rounds of ammunition. For each test, Officer Hoffman pulled the trigger and the rifle fired all five rounds of ammunition automatically with a single function of the trigger. In addition, Officer Hoffman tested the black tube by attaching it to the barrel of a Ruger, Model 22/45, .22 caliber semiautomatic pistol. He fired the pistol – both with and without the black tube attached – and, using a Nexus Acoustic Conditioner Amplifier, determined that the black tube reduced the sound report of the pistol by 21.74 decibels. Based on his examination and testing, Officer Hoffman determined that the 14 plastic items qualify as "machineguns" under 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b),[3] and the black metal tube qualifies as a "firearm" under 18 U.S.C. § 921(a)(3)(C) and a "firearm silencer" under 18 U.S.C. § 921(a)(24).

## UNDERCOVER PURCHASE OF AUTO SEAR ON MARCH 23, 2021

14.     In September 2020 and February 2021, the UC sent friend requests to the Facebook account used by SCACCIA. On February 18, 2021, the UC received a message from the Facebook account in which SCACCIA stated, "Hey what's up?" The UC responded several days later, "Yo you still making bottle openers?" SCACCIA responded, "Here and there . . . Want some?"

---

[3] Officer Hoffman specifically opined that the 14 plastic items were "designed and intended solely and exclusively for use in converting a weapon into a machinegun."

15.     On March 9, 2021, the UC sent a message to the Facebook account and asked, "how much are you selling them for? And how long does it take to get them?" Two days later, the UC sent another Facebook message, stating "Still interested in bottle openers." SCACCIA responded, "Sorry . . . I got plastic ones I usually toss 15 or 20 in a bag for 40 bucks . . . Also got stainless ones now for 125," which I believe meant that he would sell 15 to 20 plastic auto sears for $40 or one stainless steel auto sear for $125. After the UC asked "how much longer the stainless ones will last," SCACCIA replied, "Much much longer plus theres only one part that can wear down over time you can replace just the one part if you ever even have to." SCACCIA stated that "[p]lastic ones are fun and cheap so no harm there but [the stainless steel ones] have a much longer lifespan . . . More reliable." The UC expressed his interest in the stainless steel version and asked if SCACCIA could get it made for the following week. SCACCIA responded, "Yup I've got a few ready to go."

16.     In a series of messages over the Facebook account, SCACCIA arranged to meet with the UC at SCACCIA's apartment complex to complete the transaction for the stainless steel auto sear on March 23, 2021. While SCACCIA and the UC were arranging to meet, SCACCIA stated, "I know you dont know me well but I do mail these things too if that's more convenient." SCACCIA told the UC that his residence was at an apartment complex at 52 Clark Street in Brockport. SCACCIA confirmed that the price for the auto sear was $125 and told the UC to call him on Facebook Messenger when he was on his way.

17.     On or about March 23, 2021, at approximately 12:08 p.m., the UC called SCACCIA over Facebook Messenger to confirm SCACCIA's location and the purchase of the auto sear. SCACCIA confirmed that he was at 52 Clark Street and that he would be outside.

When the UC arrived in a vehicle with ATF Task Force Officer Timothy Pearce, SCACCIA was in the parking lot next to the building. SCACCIA motioned them to a parking space and the UC got out of the vehicle. SCACCIA and the UC initially met in the parking lot, and then walked into the building at 52 Clark Street together and completed the transaction in the common area/stairwell of the building. The meeting was recorded by a concealed audio and video recording device. Upon meeting SCACCIA, the UC recognized him from a mugshot photograph of SCACCIA that the UC had previously viewed.

18.     During the meeting, SCACCIA asked if the UC was going to "throw it in a Colt," meaning use the auto sear in a Colt AR-15 firearm. The UC confirmed that he/she would be doing so. SCACCIA responded that the UC would have to "shave" the auto sear "a bit" to fit a Colt firearm and suggested that the UC use a "micro file" or "light abrasive" to do so. SCACCIA described the auto sear as a "95% kit." SCACCIA further stated "what you do with it after . . . I don't recommend you do anything with it," and referred to the auto sear as a "coat hanger" while laughing. The UC also asked if SCACCIA had a bag of "plastic ones," meaning plastic auto sears. SCACCIA thought he had "a few of them pre-made" and said he would go check. The UC gave SCACCIA $125 in cash in exchange for one stainless steel auto sear. SCACCIA then went into SCACCIA's apartment. SCACCIA returned a short time later and said that he did not have them "pre-made," meaning he did not have any plastic auto sears on hand at the apartment.

19.     SCACCIA then said he makes different styles and sizes of plastic auto sears. SCACCIA said the UC could "just drop it in," meaning the UC could insert the plastic auto sears into a firearm and the firearm would function. Referring to the stainless steel auto sears,

11

SCACCIA said, "I don't make them personally but I know a guy who does – he's a really good machinist." SCACCIA said that the unidentified male (UM) has been making them for him for "like six months." SCACCIA also said, "they're 90% kit . . . you gotta finish them just that little extra bit . . you gotta drill an extra hole and put a spring in there . . . there's like one little hole you gotta drill. If you mess it up, don't worry, I got extras – we can work out a deal." SCACCIA later said the plastic auto sears "are really strong, they do last a while. Over time that flapper [pointing to the stainless steel auto sear held by the UC] might wear out on you if you're using it like Rambo . . . but it should last you quite a while . . . if anything it might wear out your trigger part before it will wear out that thing." SCACCIA recounted that "one guy with a Colt said he had . . . to shave [the auto sear] a little to get it in there but once he figured it out, he got it." The UC said, "I'm sure I can probably YouTube it or something." SCACCIA replied, "it's a legal matter. I'm not trying to go to prison over a hundred bucks . . . That's why I sell them like that. I don't finish them. You do that last two little steps [referring to drilling out the hole and inserting a spring] on your own . . . I got you to the water trough, you know, now you just gotta drink." At the end of the meeting, SCACCIA said he would "whip up some extra ones" because the UC is not the only person who wants one.

20.    On March 25, 2021, ATF Firearms Enforcement Officer Daniel Hoffman examined and tested the item purchased by the UC from SCACCIA. Because the item did not have a return spring, Officer Hoffman made one from a common spring and assembled the device in approximately five minutes. During the test, Officer Hoffman  inserted the item into a semi-automatic AR-15-type rifle loaded with five rounds of ammunition. He then pulled the trigger and the rifle fired all five rounds of ammunition automatically with a single function of the trigger. Based on his examination, Officer Hoffman determined that the item is a "drop

in auto sear" that qualifies as a "machinegun" under 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b). Officer Hoffman concluded that the item was "a combination of parts designed and intended for use in converting a semiautomatic AR-type firearm into a machinegun." Below is a photograph of the stainless steel auto sear purchased by the UC on March 23, 2021,



**UNDERCOVER PURCHASE OF AUTO SEAR ON APRIL 15, 2021**

21.     On April 12, 2021, the UC arranged to purchase plastic auto sears from SCACCIA. The transaction was arranged over Facebook Messenger calls with the Facebook account. SCACCIA and the UC agreed to meet on April 15, 2021, at SCACCIA's apartment to complete the transaction.

22.     On April 15, 2021, at approximately 12:10 p.m., the UC went to meet SCACCIA at SCACCIA's apartment. The purpose of the meeting was for the UC to purchase plastic auto sears for an AR-15 firearm.[4] After SCACCIA failed to answer a Facebook call from the UC, the UC knocked on the apartment door. A female who was later identified by the UC as SCACCIA's girlfriend, who has the initials C.F., answered the door. The UC asked for "Dan" and C.F.

---

[4] The UC was equipped with a concealed recording device, which made a video and audio recording of the meeting.

13

said she would get him. A short time later, SCACCIA came to the door. SCACCIA said "there weren't as many as [he] thought," but that there were "15 in there," meaning there were 15 plastic auto sears in the bag that he had. SCACCIA asked for $20 and noted that he usually "fill[s] them up for 40 bucks," meaning fills the bag with auto sears for $40. SCACCIA handed the bag of auto sears to the UC, who gave $20 in cash to SCACCIA.

23.     During the meeting, the UC told SCACCIA that the UC used the stainless steel auto sear (which the UC had purchased on March 23, 2021). The UC said that he/she never "had so much fun shooting," noting that he/she did not think there would be such a big difference between semi-automatic and fully automatic. SCACCIA responded that "nobody ever uses it unless it's just for fun" and "no one uses this shit for bad," but acknowledged that "you get a couple of bad eggs here and there." The UC told SCACCIA that the UC's brother might want one of the stainless steel auto sears. SCACCIA responded that he had "one left right now for that" (meaning a stainless steel auto sear for an AR-15), indicating that he had six extra stainless steel auto sears for a Glock firearm. SCACCIA then said he would need two weeks to get stainless steel auto sears for an AR-15 or possibly less, noting "sometimes my guy has them like ready to go."

24.     At one point during the meeting, SCACCIA permitted the UC to enter the apartment to use the bathroom. After the UC left the bathroom, SCACCIA showed the UC a silencer. The UC asked if SCACCIA makes the silencers or buys them. SCACCIA said that he buys them. The UC asked if the silencer works and SCACCIA responded, "if you don't have subsonic it doesn't really do that much but if you do . . ." The UC asked how much SCACCIA would charge and SCACCIA said they are $60. SCACCIA said that the silencer is "just dampener

14

that's all it is." The UC asked if the silencer would fit a "Taurus," meaning a Taurus handgun. SCACCIA said that it would "as long as the thread pattern is right." SCACCIA noted that "99% of the people" that have the silencers do not want to "have ringing ears, you know, when they get done shooting." SCACCIA said that he orders ten silencers at a time from a "guy" and has them sent through DHL. SCACCIA showed the UC another silencer that he sells for $100. The UC purchased that silencer for $95 in cash from SCACCIA.

25.     During the meeting, SCACCIA went over to a table in the dining room of the apartment (next to the front window) to get the silencer that the UC purchased. The UC observed a 3-D printer on the table.[5] When SCACCIA went to the table, the UC observed him remove a handgun from his pants and place it on the table next to the 3-D printer. The video recording captured SCACCIA placing the handgun on the table next to the 3-D printer. The UC also observed two 3-D printers in the bedroom.[6] It should be noted that the UC also observed numerous 3-D printed novelty items (which consisted of plastic penises) in the apartment. SCACCIA said that he "sells tons" of the novelty items and gave the UC one for free.

26.     Below is a photograph of the items purchased from SCACCIA by the UC on April 15, 2021,

---

[5] The 3-D printer is captured in the video recording of the meeting.

[6] The UC observed the two 3-D printers as he/she walked by the bedroom, so the printers were not captured in the video recording.



27.    ATF Firearms Enforcement Officer Daniel Hoffman examined and tested the

auto sears purchased by the UC from SCACCIA. He conducted a separate test for both types of

auto sear. During each test, Officer Hoffman inserted the auto sear into a semi-automatic rifle

loaded with five rounds of ammunition. For each test, Officer Hoffman pulled the trigger and

the rifle fired all five rounds of ammunition automatically with a single function of the trigger.

Officer Hoffman did not test the black tube because the end cap did not have a center hole

drilled. Based on his examination and testing, Officer Hoffman determined that the 15 plastic

items qualify as "machineguns" under 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b),[7] and

the black metal tube qualifies as a "firearm" under 18 U.S.C. § 921(a)(3)(C) and a "firearm

silencer" under 18 U.S.C. § 921(a)(24).

---

[7] Officer Hoffman specifically opined that the 15 plastic items were "designed and intended solely and exclusively for use in converting a weapon into a machinegun."

## CONCLUSION

28.     Based on the foregoing, I submit there is probable cause to believe that, on the above dates, in the Western District of New York, SHANE ANTHONY SCACCIA committed violations of 18 U.S.C. §§ 922(a)(1)(A) (manufacturing and dealing firearms without a license), 922(a)(4) (manufacturing and dealing machineguns without a license) and 922(o)(1) (possession and transfer of machineguns), and 26 U.S.C. § 5861(d) (possession of unregistered firearms).

THERESA LLOYD
FBI Special Agent

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P.4 .1 and 4(d) on April 27, 2021:

HONORABLE MARK W. PEDERSEN
United States Magistrate Judge
Western District of New York

17